UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Respondent, ) | |
| ) | |
| v. ) | Nos. 2:12cr105; 2:16cv323 |
| ) | |
| GREGORY ALLEN RHEA ) | |
|     Petitioner. ) | |

MEMORANDUM OPINION

Pending before the Court is the motion of Gregory Allen Rhea ("Rhea" or "Petitioner"), a federal inmate, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, [Doc. 647], as well as a motion to "amend in light of Dean v. United States," [Doc. 686]. The United States has responded in opposition to the §2255 motion, [Doc. 651], and Petitioner has replied, [Doc. 661]. Because the records and files of the case conclusively establish that Petitioner is not entitled to relief under §2255, no evidentiary hearing is necessary. Petitioner's motion to amend is futile and will be denied. For the reasons which follow, the Court finds Petitioner's §2255 motion meritless and it will likewise be DENIED and DISMISSED with prejudice.

    **I. Procedural and Factual Background**

A federal grand jury indicted Rhea and eleven co-defendants on October 10, 2012, [Doc. 3]. A superseding indictment was returned on June 11, 2013, [Doc. 252]. Rhea was charged in twenty counts with drug, firearms, and money laundering crimes, [*Id*.]. On August 13, 2013, Rhea agreed to plead guilty, pursuant to a negotiated plea agreement, to Counts One (conspiracy to distribute oxycodone in violation of 21 U.S.C. §§841(b)(1)(C) and 846), Twelve (possession of firearms in

1

furtherance of drug trafficking in violation of 18 U.S.C. §924(c)(1)(A)), Fourteen (using or maintaining a place for the purpose of distributing controlled substances in violation of 21 U.S.C. §856(a)(1), and Seventeen (conspiracy to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. §841(b)(1)(B) and 846), with the remaining counts to be dismissed, [Docs. 296, 316]. As a factual basis for his guilty pleas, Petitioner stipulated to the following facts:

a) Through the testimony of several witnesses, including law enforcement officers, the United States would demonstrate, beyond a reasonable doubt, that beginning from approximately December 1, 2003, to December 14, 2004, and from approximately January 1, 2008, continuing to on or about October 10, 2012, in the Eastern District of Tennessee, and elsewhere, the defendant did knowingly and intentionally conspire with at least one other person to distribute oxycodone, a Schedule II controlled substance, and methamphetamine, a Schedule II controlled substance. During the time period of the conspiracy, the defendant admits that he entered into an agreement with co-defendants Gerald Allen Homer, Ryan Michael Guesford, Joey Wayne Vanover, Kara Leanne Greene, Ashley Nicole Gray Patterson, Johnny Wayne Neeley, Kerry Glenn Nelson, Kimberly Ann Vanover, Ricky Allen Seal, Tamara Michelle Moles, aka Tamara Michelle Parkey-Moles, and Ricky Tim Collins, and others to distribute oxycodone, a Schedule II controlled substance. The defendants obtained oxycodone from numerous physicians in the Eastern District of Tennessee and in the state of Florida for the purpose of distributing oxycodone in the Eastern District of Tennessee.
b) During the time period of the conspiracy, the defendant also admits that he entered into an agreement with co-defendants Gerald Homer, Kara Greene, Ashley Patterson, and others to distribute methamphetamine, a Schedule II controlled substance. The defendants obtained methamphetamine from numerous sources in the Eastern District of Tennessee, in the state of Georgia, and in the state of Florida for use and distribution in the Eastern District of Tennessee.
c) The defendant admits that he directed co-defendants Gerald Homer, Kara Greene, and Ashley Patterson to travel to the state of Georgia to acquire methamphetamine. The defendant admits that he supplied United States currency to finance their travels to the state of Georgia for the purpose of obtaining methamphetamine.
d) The defendant admits that he directed co-defendants Gerald Homer, Ryan Guesford, Joey Vanover, Kera Greene, Ashley Patterson, Johnny Neeley, Kerry Nelson, Kimberly Vanover, Tamara Moles, and others to travel to the state of Florida to acquire oxycodone from numerous physicians at various pain clinics. The defendant admits that he supplied United States currency to finance their travels to the state of Florida, as well as transportation and airline tickets on occasion, for the purpose of obtaining oxycodone.
e) The defendant admits that he directed co-defendants Gerald Homer, Ryan Guesford, Joey Vanover, Kera Greene, Ashley Patterson, Johnny Neeley, Kerry Nelson, Kimberly Vanover, Tamara Moles, and others to travel to the state of Florida to acquire oxycodone from numerous physicians at various pain clinics. The defendant admits that he supplied United States currency to finance their travels to the state of Florida, as well as transportation and airline tickets on occasion, for the purpose of obtaining oxycodone.

f) The defendant admits that he traveled to the state of Florida with co-defendants Gerald Homer, Ryan Guesford, Joey Vanover, Kara Greene, Ashley Patterson, Johnny Neeley, Kerry Nelson, Kimberly Vanover, Tamara Moles, and others for the purpose of obtaining oxycodone, and that he, his co-defendants, and others transported oxycodone back from the state of Florida to the Eastern District of Tennessee for the purpose of distribution.

g) The defendant further admits that he directed some of his co-defendants and others to travel to pain clinics located through the Eastern District of Tennessee to acquire oxycodone. The defendant admits that he supplied United States currency to finance trips to pain clinics in the Eastern District of Tennessee, as well as currency for the payment of medical and prescription bills, all for the purpose of obtaining oxycodone for distribution in the Eastern District of Tennessee.

h) The defendant admits that he organized trips for other co-defendants to visit physicians at pain clinics in the Eastern District of Tennessee and in the state of Florida for the purpose of obtaining oxycodone to distribute in the Eastern District of Tennessee. The defendant admits that he traveled to the state of Florida on at least fifteen (15) occasions for the purpose of obtaining oxycodone and other controlled substances from pain clinics to distribute in the Eastern District of Tennessee.

i) The defendant admits that he recruited other individuals to make appointments with a certain physician at a pain clinic in Kingsport, Tennessee, for the purpose of obtaining additional oxycodone pills to distribute in the Eastern District of Tennessee.

j) The defendant admits that he knew that the oxycodone he obtained from physicians in the Eastern District of Tennessee and the state of Florida was distributed in the Eastern District of Tennessee by himself, co-defendants, and others.

k) The defendant admits that he knew that the methamphetamine he obtained from sources in the Eastern District of Tennessee and the state of Georgia was distributed in the Eastern District of Tennessee by himself, co-defendants, and others.

l) The defendant admits that he directed some of his co-defendants to distribute oxycodone on his behalf in the Eastern District of Tennessee, and that he supplied oxycodone to his co-defendants for distribution.

m) On October 10, 2008, 1.4 grams of methamphetamine and 305 dose units of thirty (30) milligram oxycodone were discovered at the defendant's residence in Rogersville, Tennessee, pursuant to a consent search. The defendant admits that the 1.4 grams of methamphetamine and 305 dose units of oxycodone discovered at his residence belonged to him and that he intended to distribute both controlled substances.

n) On March 27, 2011, the defendant was stopped at the McGhee-Tyson Airport in Alcoa, Tennessee, while en route to Florida. The defendant was found to be in possession of $68,100 in United States currency, which was subsequently seized. The defendant admits that the $68,100 seized on that date was the proceeds of his drug trafficking activities, specifically, the distribution of oxycodone and methamphetamine. The defendant further admits that he was attempting to conceal and disguise the source of the $68,100, which were the proceeds of his drug trafficking activities, by attempting to enter into a real estate transaction in the state of Florida.

o) The Morristown Police Department began investigating the drug trafficking activities of the defendant utilizing a confidential informant in 2011. From July 29, 2011, to September 18, 2012, nine undercover drug transactions occurred, all of which resulted in the purchase of oxycodone from the defendant and some of his co-defendants. As a result, the following undercover drug transactions occurred:

1. On July 29, 2011, the defendant admits that he sold ten (10) dose units of thirty (30) milligram oxycodone pills to a confidential informant in Morristown, Tennessee.
2. On August 13, 2011, the defendant admits that he sold ten (10) dose units of thirty (30) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee. During this transaction, the defendant admits that he attempted to recruit the confidential informant to travel to a pain clinic in Bearden, Tennessee, for the purpose of obtaining oxycodone. The defendant further admits that he offered to "sponsor" the confidential informant to go to this pain clinic, which means that the defendant agreed to provide money for travel to the clinic and the payment of medical and prescription bills in exchange for half of the prescription pills obtained as a result of the pain clinic appointment.
3. On August 27, 2011, the defendant admits that he and co-defendant Joey Vanover sold ten (10) dose units of thirty (30) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee.
4. On September 2, 2011, the defendant admits that he and co-defendants Ryan Guesford and Joey Vanover sold five (5) dose units of thirty (30) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee.
5. On September 10, 2011, the defendant admits that he sold ten (10) dose units of thirty (30) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee.
6. On October 11, 2011, the defendant admits that he and co-defendants Joey Vanover and Kimberly Vanover sold nine (9) dose units of thirty (30) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee.
7. On November 23, 2011, the defendant admits that he sold twenty (20) dose units of fifteen (15) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee.
8. On April 1, 2012, the defendant admits that he sold ten (10) dose units of thirty (30) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee.
9. On September 18, 2012, the defendant admits that he sold ten (10) dose units of thirty (30) milligram oxycodone pills to a confidential informant at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee.

p) On April 4, 2012, a federal search warrant was executed at the defendant's residence, located at 412 Hayter Drive, Morristown, Tennessee, which resulted in the seizure of 1,094.75 dose units of controlled substances, $7,000 in United States currency, documents related to drug trafficking and obtaining controlled substances from pain clinics and pharmacies located in the Eastern District of Tennessee and the state of Florida, in addition to twenty-three (23) firearms. The controlled substances seized included 167 dose units of thirty (30) milligram oxycodone and three and one-half (3.5) dose units of

fifteen (15) milligram oxycodone. The defendant admits that the controlled substances and firearms seized from his residence belonged to him. The defendant further admits that he possessed these firearms during the course of and in furtherance of his drug trafficking activities at his residence located at 412 Hayter Drive, Morristown, Tennessee. The defendant further admits that the $7,000 in United States currency which was seized was the proceeds of his drug trafficking activities.

q) Pharmacy records demonstrate that the defendant obtained 8,560.25 dose units of oxycodone, OxyContin®, opana, alprazolam, carisoprodol (soma), hydrocodone, morphine and other controlled substances from multiple physicians from March 4, 2010, to April 23, 2012. During that time period, the defendant obtained 4,794 dose units of 30 milligram oxycodone tablets and 420 dose units of 80 milligram OxyContin® (5,214 total oxycodone tablets) from multiple physicians, for a total of 177,420 milligrams of oxycodone.

r) Based upon the defendant's admitted level of organization and participation in this conspiracy, the defendant admits that he is responsible for 778,570 milligrams of oxycodone, which is the equivalent of 5,216.42 kilograms of marijuana, and 45 grams of methamphetamine, which is the equivalent of 90 kilograms of marijuana.

s) Due to the defendant's involvement and role in these offenses, the defendant agrees that the base offense level in this case shall be increased by 4 levels, as the defendant admits that he was an organizer or leader of a criminal activity that was extensive and involved five or more participants, pursuant to § 3B1.1 of the Sentencing Guidelines.

t) The defendant further admits and agrees that he is responsible for a money judgment in the amount of $1,200,000, which represents the proceeds of oxycodone and methamphetamine for which the defendant admits responsibility.

u) The defendant further agrees to the forfeiture of his interests in the residence located at 412 Hayter Drive, Morristown, Tennessee, and further agrees to the forfeiture of $68,100.00 in U.S. currency, $7,000.00 in U.S. currency, and all firearms seized in connection with this case, as further described herein in paragraph 9.

[Doc. 296 at 3-10].

Petitioner appeared before the Court and entered pleas of guilty on September 10, 2013, and a presentence report ("PSR") was ordered, [Docs. 312, 494]. The PSR was disclosed to the parties on March 10, 2014, [Doc. 489]. The PSR established a total offense level of 40 and a criminal history category of II, resulting in an advisory guidelines range of 324 to 465 months imprisonment. [*Id.*]. Three days after disclosure of the PSR, Rhea filed a motion to withdraw his guilty pleas, [Doc.506], which was supplemented by appointed counsel, [Doc. 531,532]. After an evidentiary hearing, the motions were denied by the Court. [Docs. 541, 547]. At sentencing, the Court varied downward and imposed a 288 month term of imprisonment, [Docs. 554, 570]. A notice of appeal was filed, [Doc. 556], and, on July 14, 2015, the Sixth Circuit Court of Appeals affirmed this Court's

judgment, [Doc. 588]. This timely §2255 motion followed.

## II. Standard of Review

This Court must vacate and set aside Petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. §2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the §2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S.

988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). *See also Bousley*, 523 U.S. at 622-23. This hurdle a petitioner faces to excuse procedural default is "intentionally high[,]… for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Further, federal inmates are not entitled to relitigate claims that were raised and considered on direct appeal absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

### III. Analysis and Discussion

#### A. Motion To Amend

Rule 15 of the Federal Rules of Civil Procedure sets a liberal standard for amendments. The Court "should freely give leave when justice so requires." Rule 15 reinforces the principle that cases "should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward,* 689 F2d

637, 639 (6th Cir. 1982). However, the right to amend is not absolute or automatic. *Tucker v. Middleburg-Legacy Place, LLC,* 539 F3d 545, 551(6th Cir. 2008). District courts consider a number of factors when determining whether to grant a motion to amend under Rule 15(a)(2) including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 597 F.3d 722,729(6th Cir. 2009). Here, the motion to amend is futile.

Petitioner seeks to amend his §2255 motion to state a claim pursuant to the recent holding of the United States Supreme Court in *Dean v. United States,* 137 S. Ct. 1170, 1178 (2017) in which the Supreme Court held that sentencing courts may consider "a mandatory minimum under §924(c) when calculating an appropriate sentence for the predicate offense." A §2255 petitioner such as Rhea may take advantage of a new rule only if it is a new rule of constitutional law or is made retroactive to cases on collateral review by the Supreme Court. *Teague v. Lane*, 489 U.S. 288 (1989). *Dean* "involved a question of statutory interpretation" and "did not announce a new rule of constitutional law. Nor has the Supreme Court made *Dean* retroactive to cases on collateral review." *In re: Marcus Lyonel Story*, No. 17-6150, United States Court of Appeals for the Sixth Circuit (April 18, 2018). *Dean*, therefore, offers Rhea no hope of relief.

### B. The §2255 Motion

Petitioner raises three claims of ineffective assistance of counsel in his motion: 1) counsel "failed to sufficiently investigate the facts underlying movant's §924(c)(1) conviction. . . and to argue at movant's Rule 11 hearing that it was not a factual basis to establish that movant was guilty of a §924(c)(1) conviction," [Doc. 647-1 at 5]; 2) counsel failed to adequately investigate "concerning movant's prior state conviction for possession of drug paraphernalia," [*id*. at10]; and 3)counsel improperly advised Petitoner "to agree to the four point leadership enhancement" resulting in a sentence disproportionate to co-defendants in the case. The Court will address each claim in turn.

### 1. Factual basis for §924(c) conviction

Petitioner argues that "the evidence was insufficient for finding of guilt under the firearms offense." He argues that he "did not intend to use the firearms in furtherance of the drug trafficking offense." [*Id.* at 7]. The United States responds that this claim is procedurally defaulted and is also precluded by the §2255 waiver in Petitioner's plea agreement. [Doc. 651 at 4-5]. The Court agrees that the claim is precluded by the waiver in the plea agreement and, even if not, lacks merit.

In his plea agreement, Petitioner waived "the right to file any motions or pleadings pursuant to 28 U.S.C. §2255 or to collaterally attack the defendant's convictions and/or resulting sentence," except for "claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of the judgment." [Doc. 296 at 15-16]. Petitioner ignores this waiver argument in both his original motion and his response. It cannot be so conveniently ignored, however, in light of the government's response that this claim is barred by the waiver.

Like other constitutional rights, a defendant may waive his right to collaterally attack a conviction and sentence and such a waiver provision in a plea agreement is enforceable. *See United States v. Fleming*, 239 F.3d 761, 763-64(6th Cir. 2001); *United States v. Ashe*, 47 F.3d 770, 775-76(6th Cir. 1995). "[A] defendant's informed and voluntary waiver of the right to collaterally attack a conviction is enforceable." *In re Acosta*, 480 F.3d 421, 422(6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450(6th Cir. 2001): *Watson v. United States,* 165 F.3d 486, 489 (6th Cir. 1999*).* Both this Court and the Sixth Circuit have already found that Petitioner knowingly and voluntarily waived his appellate rights, [*see* Docs. 547, 588]. As the Sixth Circuit found, "[t]he record shows that the district court complied with Rule 11's requirements and . . . Rhea's guilty pleas were voluntary, knowing, and intelligent." [Doc. 588 at 3]. Likewise, when specifically discussing whether Petitioner voluntarily and knowingly waived his appellate rights, the Court noted that "in accordance with Rule 11(b)(1)(N), the district court addressed the appellate waiver provision during the plea colloquy and confirmed that Rhea understood this waiver." [*Id.* at 3-4]. Because Petitioner entered knowing and

9

voluntary guilty pleas and "acknowledged the appellate waiver during the plea hearing," [*id*. at 4], his challenges to his convictions and sentence were barred on direct appeal. Likewise, the government is correct that Petitioner has knowingly and voluntarily waived his right to collaterally attack his convictions and sentence. Furthermore, there is little doubt that this claim comes within the parameters of the waiver. i.e., his claim of ineffective assistance of counsel was known to him well before the entry of the judgment in the case. In fact, he specifically raised the claim before entry of the judgment, arguing that his attorney had given erroneous advice as to the "in furtherance of" charge and he would not have pled guilty but for the erroneous advice. He further argued that his attorney had not discussed with him the appellate and collateral review waivers, despite his sworn testimony to the contrary at the change of plea hearing. Those claims have been fully litigated or procedurally defaulted and the result is conclusive against him. He may not relitigate these in the current §2255 proceeding. See *Jones v. United States*, 178 F. 3d 790, 796(6th Cir. 1999).

### 2. Prior Conviction for Possession of Drug Paraphernalia

Petitioner contends counsel was ineffective for failing "to track down the Court documents that clearly show that Movant's Probation violation was reinstated and terminated on the same day." As a result, he argues he should have received only one criminal history point, rather than two for the conviction. [Doc. 647-1 at 10]. He makes the same argument as to appointed appellate counsel. Petitioner characterizes appellate counsel as "a doormat and tool for the Government" who made "nonthing[sic] but incomplete arguments and arguments the government would put in there[sic] brief." [*Id*.]. The United States responds that "the Sixth Circuit has already rejected petitioner's claim that his criminal history score was miscalculated" and that he cannot use a §2255 motion to relitigate the issue. [Doc.651 at 6(citing *Jones*, *supra*)]. The government is correct.

On direct appeal, defendant's appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738(1967). One of the potential arguments raised by counsel in the brief was that Petitioner argued "that his criminal history category was one." *United States v. Rhea*, No. 14-6356,

Sixth Circuit Court of Appeals, document18 at 32(available on PACER). Rhea himself raised the precise issue that he raises here, i.e., whether he served sixty days for his 2004 misdemeanor conviction for possession of drug paraphernalia, and the record before the Sixth Circuit contained the very same documents Rhea has filed with his §2255 motion. [*Id*. at 32-33]. After appellate counsel's motion to withdraw pursuant to *Anders*, Rhea was given the opportunity to respond, *see* No. 14-6356, document 26. In his pro se response, Petitioner argued that, although the violation of probation warrant was served on October 6, 2006, the violation hearing did not occur until December 15, 2006, and "[b]y that time the initial 11 month/29 day probation had run." [*Id*.at 24]. He acknowledged, however, that 63 days in jail had been served between his arrest on the warrant and the hearing, but he asserted that it "was not imposed as a punishment, it was simple. . .[time] that he had served awaiting hearings," and thus "not the intent" of USSG §4A1.1(b). On these facts and arguments, the Sixth Circuit held the district court "did not err in assessing two criminal history points for Rhea's 2005 conviction for possession of drug paraphernalia." [Doc. 588 at 4]. Counsel was not ineffective for failing to further investigate a meritless issue.

To the extent Petitioner also makes a claim of ineffective assistance of appellate counsel, it fails for another simple reason. The claim is conclusory, without any factual development whatsoever. Rule 2 of the Rules Governing §2255 motions requires a motion to "specify all grounds for relief available to the moving party" and "state the facts supporting each ground." A petition which fails to state the supporting facts is legally insufficient and may be dismissed. *McFarland v. Scott*, 512 U.S. 849,856(1994). Furthermore, even if petitioner could show that appellate counsel was somehow deficient on this issue, Rhea could not establish prejudice because he was able to file his own pro se brief and the Sixth Circuit had all information relevant to Rhea's criminal history category before its decision was reached.

### 3. Leadership Enhancement/Disparate Sentence with Co-defendants

This claim fails for several reasons.

First, the leadership enhancement was fully justified based on the stipulated facts in the case. Second, the argument that petitioner's sentence was disproportionate to sentences received by his co-defendants and that the leadership enhancement was not justified because he was no more culpable than co-defendants who did not receive the enhancement has been decided on direct appeal.

Section 3B1.1(a) provides for a four-level enhancement if the defendant "was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." USSG §3B1.1(a). The commentary to the Guideline provision lists a number of factors the court may consider when deciding whether to apply the enhancement: (1) exercise of decision making authority; (2) nature of participation in the commission of the offense; (3) recruitment of accomplices; (4) right to a larger share of the fruits of the crime; (5) degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) degree of control and authority exercised over others. *Id.*, cmt. n.4. For the enhancement to apply, the defendant must also have supervised "a *participant*, not the assets of the criminal enterprise." *United States v. Castilla-Lugo*, 699 F3d 454, 460 (6th Cir. 2012). That requirement, however, is not onerous and may be satisfied if the defendant "exercises control over just one person." *United States v. Richards*, 508 F App'x 444, 450(6th Cir. 2012)(quoting *United States v. Solorio*, 337 F3d 580, 601(6th Cir. 2003)).

Petitioner did not, and does not now, contest that the criminal activity involved five or more participants, *see* [Doc. 296, ¶¶5(b) & (c)(listing far more than five participants)]. Likewise, the leadership enhancement was beyond doubt appropriate based on the stipulated facts, which Petitioner does not even now contest. For instance, Petitioner stipulated the he "directed co-defendants Gerald Horner, Kara Greene, and Ashley Patterson to travel to the state of Georgia to acquire methamphetamine," [*id.* at ¶4(d)]; that he "directed co-defendants Gerald Horner, Ryan Guesford, Joey Vanover, Kara Greene, Ashley Patterson, Johnny Neeley, Kerry Nelson, Kimberly Vanover, Tamara Moles, and others to travel to the state of Florida to acquire oxycodone," [*id.* at

¶4(e)]; that he financed their travels, [*id*. at ¶¶4(d) & (e)]; that he "directed some of his co-defendants and others to travel to pain clinics located throughout the Eastern District of Tennessee to acquire oxycodone" and financed the trips, [*id*. at ¶4(g)]; that he "organized trips for other co-defendants to visit physicians at pain clinics in the Eastern District of Tennessee and in the state of Florida for the purpose of obtaining oxycodone to distribute in the Eastern District of Tennessee,"[*id*. at ¶4(h)]; that he "recruited other individuals to make appointments with a certain physician at a pain clinic in Kingsport, Tennessee, for the purpose of obtaining additional oxycodone pills to distribute," [*id*. at ¶ 4(i)]; and that he 'directed some of his co-defendants to distribute oxycodone on his behalf," [*id.* at ¶4(l)].

As with the prior issue, Rhea raised and fully litigated this claim on direct appeal. Because the issues raised by Rhea's pro se brief in the Sixth Circuit lacked merit and the Sixth Circuit's independent review revealed no "arguable" issues, the district court's judgment was affirmed in full. [Doc. 588 at 3]. More specifically, the Sixth Circuit found that the "district court thoroughly addressed Rhea's sentencing disparity arguments." [*Id*. at 4]. Rhea cannot reargue these claims in this §2255 motion. Counsel was not ineffective in advising the petitioner "to agree to the four point leadership enhancement" or in arguing disparity with co-defendant's sentences.

### IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his motion **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a

13

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealability.

A separate judgment will enter.

ENTER:

                                                                 s/J. RONNIE GREER
                                               UNITED STATES DISTRICT JUDGE